**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FELIPE SANCHEZ,                          )    NO. CV 15-8038-E
                                         )
                Plaintiff,               )
                                         )
        v.                               )    **MEMORANDUM OPINION**
                                         )
CAROLYN W. COLVIN, Acting                )
Commissioner of Social Security,         )
                                         )
                Defendant.               )
_____ )


**PROCEEDINGS**


        Plaintiff filed a complaint on October 13, 2015, seeking review
of the Commissioner's denial of benefits.  The parties consented to
proceed before a United States Magistrate Judge on March 22, 2016.
Plaintiff filed a motion for summary judgment on March 23, 2016.
Defendant filed a motion for summary judgment on May 20, 2016.  The
Court has taken the motions under submission without oral argument.
See L.R. 7-15; "Order," filed October 19, 2015.
///
///

1       **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

2

3      Plaintiff, who last worked on February 4, 2009, asserted

4 disability since January 1, 2010, based on alleged: degenerative disc

5 disease of the cervical and lumbar spine with chronic

6 musculoligamentous sprain/strain, bilateral upper and lower extremity

7 pain, a history of chronic gastritis, and diffuse mild spondylosis in

8 the lumbar spine (Administrative Record ("A.R.") 31, 121-31, 159, 178-

9 93, 196-205).  Plaintiff did not allege any specific mental or

10 psychological impairment (A.R. 178-93, 196-205; <u>see also</u> A.R. 28-30

11 (Plaintiff's representative arguing at the administrative hearing that

12 Plaintiff was disabled by physical impairments); A.R. 221-27 (briefing

13 arguing same to the Administrative Law Judge and Appeals Council)).

14

15      An Administrative Law Judge ("ALJ") reviewed the medical record

16 and heard testimony from Plaintiff, Plaintiff's girlfriend, and a

17 vocational expert (A.R. 11-220, 228-826).  The ALJ found Plaintiff

18 suffers from severe degenerative disc disease of the cervical and

19 lumbar spine (A.R. 12).  The ALJ found that Plaintiff's alleged

20 musculoligamentous sprains/strains and spondylosis were "best

21 characterized" as degenerative disc conditions (A.R. 12).[1]  The ALJ

22 determined that Plaintiff retains the residual functional capacity to

23 ///

24 _____

25     [1]   The ALJ found that Plaintiff's history of gastritis was
not a "severe" impairment, observing that Plaintiff worked for
26 years with the condition (A.R. 12).  As for Plaintiff's alleged
bilateral upper and lower extremity pain, the ALJ identified no
27 separate "severe" impairment, noting that Plaintiff had normal
EMGs (electromyograms) of the upper and lower extremities (A.R.
28 12 (citing A.R. 333-43).

1    perform a limited range of light work,[2] and that, with such capacity,

2    Plaintiff could perform work as a small products assembler,

3    housekeeping cleaner, and sorter (A.R. 13-19 (adopting vocational

4    expert testimony at A.R. 52-53)).  The Appeals Council denied review

5    (A.R. 1-5).

6

7                    **SUMMARY OF PLAINTIFF'S CONTENTIONS**

8

9        Plaintiff contends:

10

11       1.   The ALJ allegedly failed to give adequate reasons for

12            rejecting the opinions of various treating and examining

13            physicians;

14

15       2.   The ALJ allegedly failed to include all of Plaintiff's

16            claimed limitations in the hypothetical question the ALJ

17            posed to the vocational expert; and

18

19       3.   The ALJ allegedly discredited Plaintiff's testimony

20            improperly.

21    _____

22       [2]   Specifically, the ALJ found Plaintiff could:

23       [L]ift and carry up to 20 pounds occasionally and 10
         pounds frequently, sit for 6 [six] hours in an 8-hour
24       workday, stand and/or walk for 6 [six] hours in an 8-
         hour day, . . . [but] cannot climb ladders, ropes or
25       scaffolds and can only occasionally perform other
         postural maneuvers (e.g., climbing ramps and stairs,
26       balancing, stooping, kneeling, crawling, and
27       crouching).

28    (A.R. 13).

                                  3

1              **STANDARD OF REVIEW**

2

3         Under 42 U.S.C. section 405(g), this Court reviews the

4    Administration's decision to determine if: (1) the Administration's

5    findings are supported by substantial evidence; and (2) the

6    Administration used correct legal standards.  <u>See</u> <u>Carmickle v.</u>

7    <u>Commissioner</u>, 533 F.3d 1155, 1159 (9th Cir. 2008); <u>Hoopai v. Astrue</u>,

8    499 F.3d 1071, 1074 (9th Cir. 2007); <u>see also</u> <u>Brewes v. Commissioner</u>,

9    682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such

10   relevant evidence as a reasonable mind might accept as adequate to

11   support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401

12   (1971) (citation and quotations omitted); <u>see also</u> <u>Widmark v.</u>

13   <u>Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006).

14

15        If the evidence can support either outcome, the court may

16        not substitute its judgment for that of the ALJ.  But the

17        Commissioner's decision cannot be affirmed simply by

18        isolating a specific quantum of supporting evidence.

19        Rather, a court must consider the record as a whole,

20        weighing both evidence that supports and evidence that

21        detracts from the [administrative] conclusion.

22

23   <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

24   quotations omitted).

25   ///

26   ///

27   ///

28   ///

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied.  The Administration's findings are supported by substantial evidence and are free from material[3] legal error.  Plaintiff's contrary arguments are unavailing.

**I.   Substantial Evidence Supports the Conclusion that Plaintiff Can Work.**

Substantial evidence supports the conclusion Plaintiff is not disabled.  Plaintiff's initial worker's compensation treating physician, Dr. Gokuldas M. Pai, diagnosed a right hip contusion/sprain and lumbar contusion/sprain (A.R. 372).  Dr. Pai opined that Plaintiff could return to modified work on February 9, 2009 (before the alleged onset date but after the date Plaintiff stopped working), limited to lifting no more than 25 pounds, wearing back support, and avoiding all climbing of ladders or stairs (A.R. 304, 370-72, 378; see also A.R. 306, 377 (modifying the limitations on February 13, 2009, to include no repetitive bending)).

Dr. Concepcion Enriquez prepared an internal medicine consultation dated August 10, 2010 (after the alleged onset date) (A.R. 553-56).  On examination, there reportedly was tenderness in the

_____

[3]     The harmless error rule applies to the review of administrative decisions regarding disability.  See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

cervical and lumbar spine, decreased range of motion in the lumbar spine, positive straight leg raising seated on the right at 70 degrees (but negative supine), and no need for an assistive device for ambulation (despite the fact that Plaintiff was using a single point cane) (A.R. 554-56).[4]  Dr. Enriquez opined that Plaintiff would be capable of performing medium work with frequent bending, stooping, twisting, and above-the-shoulder lifting, pulling and pushing (A.R. 556).

A State agency physician reviewed the record and completed a Physical Residual Functional Capacity Assessment form dated January 4, 2012 (A.R. 754-61).  This physician opined that Plaintiff is capable of light work (A.R. 754-61).

Dr. Pai's treating physician opinion and Dr. Enriquez's consultative examiner opinion, each of which endorsed a residual functional capacity greater than the capacity the ALJ found to exist, provide substantial evidence to support the ALJ's non-disability determination.  See Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (discussing deference owed to treating and examining physician opinions in determining a claimant's ability to work; where an examining physician provides "independent clinical findings that differ from findings of the treating physician, such findings are 'substantial evidence'") (citations and internal quotations omitted). The non-examining State agency physician's opinion that Plaintiff is capable of light work without restrictions also supports the ALJ's

_____

[4]    X-rays from the same date showed mild degenerative disc disease at L5-S1 (A.R. 557).

findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)
(where the opinions of non-examining physicians do not contradict "all
other evidence in the record" an ALJ properly may rely on these
opinions); Curry v. Sullivan, 925 F.2d 1127, 1130 n.2 (9th Cir. 1991).

     The vocational expert testified that a person with the residual
functional capacity the ALJ found to exist could perform certain jobs
existing in significant numbers in the national economy (A.R. 52-53).
The ALJ properly relied on this testimony in denying disability
benefits.  See Barker v. Secretary of Health and Human Services, 882
F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771,
774-75 (9th Cir. 1986).[5]

     To the extent any of the medical evidence is in conflict, it is
the prerogative of the ALJ to resolve such conflicts.  See Lewis v.
Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  When evidence "is
susceptible to more than one rational interpretation," the Court must
uphold the administrative decision.  See Andrews v. Shalala, 53 F.3d

---

     [5]     The Court rejects Plaintiff's argument that the ALJ
should have included in the hypothetical questioning of the
vocational expert supposed mental (and other) limitations the ALJ
did not find to exist.  Hypothetical questions posed to a
vocational expert need not include all conceivable limitations
that a favorable interpretation of the evidence might suggest --
only those limitations the ALJ actually finds to exist.  See,
e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir.
2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001);
Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989);
Martinez v. Heckler, 807 F.2d at 773-74.  As discussed herein,
the ALJ did not find that Plaintiff suffered from any mental
limitations, and the ALJ included in her hypothetical questioning
all of the limitations she found to exist.  Compare A.R. 13
(ALJ's findings) with A.R. 52-53 (hypothetical questioning).

at 1039-40; <u>accord</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002); <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).  The Court will uphold the ALJ's rational interpretation of the evidence in the present case notwithstanding any conflicts in the record.

**II.   Plaintiff's Other Arguments are Unavailing.**

    **A.   The ALJ Stated Sufficient Reasons for Rejecting the Opinions of Other Treating and Examining Physicians.**

Plaintiff argues that the ALJ erred in rejecting the opinions of various treating and examining physicians.  <u>See</u> Plaintiff's Motion, pp. 1-9.  No material error occurred.

Generally, a treating physician's conclusions "must be given substantial weight." <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988); <u>see Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . .  This is especially true when the opinion is that of a treating physician") (citation omitted); <u>see also</u> <u>Orn v. Astrue</u>, 495 F.3d at 631-33 (discussing deference owed to treating and examining physicians' opinions).  The opinion of an examining physician generally should receive more weight than the opinion of a non-examining physician.  <u>Andrews v. Shalala</u>, 53 F.3d at 1040-41. Where a treating physician's opinions are contradicted by another physician, the opinions can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the ///

1  record.  <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995).[6]

2  Contrary to Plaintiff's arguments, the ALJ stated sufficient reasons

3  for discounting the opinions at issue.

4

5      **1.  Dr. Chanin**

6

7      The record contains several one-page primary treating physician

8  reports prepared by Dr. Craig Chanin for Plaintiff's worker's

9  compensation claim from February through December 2011 (A.R. 603, 615-

10  25, 747-53).  Dr. Chanin's notes reflect that Plaintiff complained of

11  "constant" pain, with no "objective findings" (<u>i.e.</u>, no significant

12  physical examination, laboratory, imaging, or other diagnostic

13  findings) (A.R. 616, 620, 624, 749, 752).[7] From the beginning of

14  treatment, Dr. Chanin opined that Plaintiff would be able to return to

15  modified work (A.R. 603).  Specifically, Dr. Chanin opined that

16  Plaintiff could return to modified work, limited to no prolonged

17  standing or walking, no climbing, bending, or stooping, limited use of

18  the right and left hand, no sports, and lifting no more than 15 pounds

19  (A.R. 615, 618, 622, 747-48, 750-51, 753).

20

21      The ALJ rejected Dr. Chanin's opinions regarding specific

22  limitations for Plaintiff, finding that Dr. Chanin "offered minimal

23  objective data," and appeared to accept Plaintiff's subjective

24

25      _____

26      [6]    Rejection of an uncontradicted opinion of a treating
    physician requires a statement of "clear and convincing" reasons.

27  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d at 830-31.

28      [7]    An undated record contains shorthand notations in the
    "objective findings" section that are illegible.  <u>See</u> A.R. 749.

statements (A.R. 16).  An ALJ may reject a treating physician's opinion where, as here, the physician premised the opinion "to a large extent" on the claimant's properly discounted subjective complaints (discussed below).  See Morgan v. Commissioner, 169 F.3d 595, 602 (9th Cir. 1999); accord Mattox v. Commissioner of Social Security, 371 Fed. App'x 740, 742 (9th Cir. 2010); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989); compare Ghanim v. Colvin, 763 F.3d 1154, 1162-63 (9th Cir. 2014) ("when a [treating physician's] opinion is not more heavily based on a patient's self-reports than on clinical observations," an ALJ may not discount the treating physician's opinion based on the patient's lack of credibility).  Additionally, an ALJ may reject a treating physician's opinion where the opinion is not supported by the physician's own treatment notes or objective clinical findings.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes); Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors to consider in weighing treating source opinion include the supportability of the opinion by medical signs and laboratory findings, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship including examinations and testing, whether

the opinion is from a specialist concerning issues related to the source's area of specialty, as well as the opinion's consistency with the record as a whole).

### 2.   Dr. Grogan

Orthopedic surgeon Dr. Thomas Grogan prepared a physical examination report dated September 7, 2011 (A.R. 605-06).  Plaintiff reportedly complained of diffuse pain in multiple parts of his body (A.R. 605).  On examination, Dr. Grogan observed full range of motion in the upper extremities (with pain) despite Plaintiff wearing splints on both wrists, a normal gait, despite Plaintiff's use of a cane, pain on palpation in the cervical and lumbar spine, a limited range of motion in the cervical and lumbar spine (with pain), full range of motion in the lower extremities with pain on palpation, and "positive" straight leg raising "for reproduction of back pain" (A.R. 606-07). Dr. Grogan reviewed x-rays of Plaintiff's spine showing degenerative disc disease at C6-C7, and diffuse osteopenia with minimal changes and early degenerative disc disease at L5-S1 (A.R. 606).  Dr. Grogan diagnosed chronic degenerative disc disease in the cervical and lumbar spine with chronic musculoligamentous sprain/strain, bilateral upper and lower extremity pain of uncertain etiology, and a history of chronic gastritis (A.R. 606).  Dr. Grogan opined that Plaintiff was incapable of performing construction work (A.R. 606; see also A.R. 764 (January 12, 2012 reevaluation letter noting no change on physical examination and again stating that Plaintiff should be precluded from construction work)).

///

1    Dr. Grogan also completed a one-page, check-box "Physical

2  Capacities Evaluation" form on September 7, 2011.  This evaluation

3  claimed that Plaintiff would have extreme limitations, i.e., Plaintiff

4  could sit only three hours, stand two hours, and walk one hour in an

5  eight-hour day, could occasionally lift and carry only five pounds,

6  could use his hands for repetitive grasping, but not pushing and

7  pulling of arm controls or for fine manipulations, could not use his

8  feet for repetitive movements, could not bend, squat, crawl, climb, or

9  reach, and could do no work at unprotected heights, around moving

10 machinery, or driving (A.R. 610; see also A.R. 772 (January 12, 2012

11 Physical Capacities Evaluation finding same limitations except also

12 precluding Plaintiff from using his hands for repetitive grasping, and

13 finding that Plaintiff could occasionally bend and reach); A.R. 817

14 (December 17, 2012 Physical Capacities Evaluation finding Plaintiff

15 would be further limited to sitting only two hours, standing only one

16 hour, and walking zero hours in an eight-hour day, never lifting or

17 carrying any weight, and no using hands or feet for repetitive

18 actions)).

19

20   The ALJ summarized Dr. Grogan's records and accepted Dr. Grogan's

21 opinions ruling out construction work, but rejected Dr. Grogan's more

22 limiting functional assessments (A.R. 16-17).  The ALJ reasoned that

23 Dr. Grogan's one-page assessments "appear inconsistent with his

24 reported objective data," citing as an example Plaintiff's normal

25 range of motion throughout the upper and lower extremities and Dr.

26 Grogan's failure to identify an etiology for the alleged, related pain

27 (A.R. 17).  The ALJ concluded that nothing in Dr. Grogan's

28 examinations suggested the breadth or extent of the exertional,

postural or environmental limitations Dr. Grogan assessed (A.R. 17).[8]
Additionally, the ALJ reasoned that the weight of other medical and
lay evidence finding Plaintiff capable of at least light work
undermined Dr. Grogan's more limiting assessments (A.R. 17).

The ALJ's reasoning justifies the rejection of Dr. Grogan's
check-box opinions.  An ALJ properly may reject a treating physician's
opinion that is "so extreme as to be implausible and . . . not
supported by any findings made by any doctor, including [the treating
physician]."  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001);
see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ
permissibly could reject evaluations "because they were check-off
reports that did not contain any explanation of the bases of their
conclusions").

### 3.   Drs. Roemer and Boyer (Chiropractors)

Plaintiff received much of the treatment related to his worker's
compensation claim from chiropractors.  See, e.g., A.R. 236-301, 406-
08, 429-31, 434, 438-537, 549-50, 653-61, 671-713.  Plaintiff claims
that the ALJ ignored the opinions of chiropractors Drs. Kirk Roemer
and Charles Boyer that Plaintiff should remain off work during
treatment in 2009 and 2010 (Plaintiff's Motion, p. 7).

---

[8]     The State agency physician who reviewed Dr. Grogan's
examination notes opined that Dr. Grogan's September 2011
examination notes did not support his assessment (A.R. 760).  The
review physician also stated that straight leg raising "positive
for reproduction of back pain" is not a positive straight leg
raising test (A.R. 760).

On worker's compensation forms, Dr. Roemer initially estimated that Plaintiff would be able to return to his regular or customary work on October 31, 2009 (A.R. 431).[9]  After a follow-up visit on October 1, 2009, Dr. Roemer stated that Plaintiff should remain off work until November 15, 2009 (A.R. 497).  On follow-up forms from later appointments, Dr. Boyer estimated that Plaintiff could return to work on December 5, 2009, February 12, 2010, and April 9, 2010 (A.R. 438-40).  Dr. Boyer prepared "disability slips" indicating that Plaintiff had been placed on "modified work" from February 23, 2010 until July 15, 2010 (A.R. 525, 530, 673).  These "disability slips" do not specify the nature of the "modified work" Plaintiff assertedly could perform (id.).  By June 2, 2010, Dr. Boyer indicated that Plaintiff could "RTW" (return to work) without any limitations (A.R. 661).

The ALJ rejected the chiropractors' diagnoses, correctly stating that a chiropractor is not an acceptable medical source and cannot establish a medically determinable impairment (A.R. 12 (citing 20 C.F.R. §§ 404.1513, 416.913 (defining acceptable medical sources))).  The ALJ also observed that another chiropractor, Dr. Tram Sotelo (who treated Plaintiff before Drs. Roemer and Boyer), had allowed for Plaintiff to return to modified work with assessments consistent with light work (A.R. 15 (citing, inter alia, A.R. 269 (Dr. Sotelo's

---

[9]    As reported, Plaintiff's regular work as a carpenter required that he: (1) stand and/or walk eight hours a day, (2) handle, carry, and cut large sheets of plywood; and (3) bend, grip, push, carry, kneel, squat, lift, stoop, look up, turn, grasp, pull, and twist (A.R. 267-68).  Plaintiff testified that he lifted 70 pound sheets of plywood in this job (A.R. 32).

1  disability slip for "total temporary disability/modified work" dated

2  April 3, 2009)).[10]  The only assessments in the record identifying any

3  specific work restrictions during this time are Dr. Pai's assessments

4  discussed above.  See A.R. 15 (citing A.R. 305, 380 (Dr. Pai's notes

5  from February 2009)).

6

7      The ALJ did not materially err in failing further to credit, or

8  in failing further to discuss, the opinions of Dr. Roemer or Dr.

9  Boyer.  An ALJ is not required to discuss "every piece of evidence."

10

11     [10]   Dr. Sotelo had ordered imaging studies of Plaintiff's
   spine.  A cervical spine MRI from March 24, 2009, showed 1-2
12  millimeter posterior disc bulges at C4-C5 and C5-C6 without
   evidence of canal stenosis or neural foraminal narrowing, and
13  mild to moderate bilateral neural foraminal narrowing secondary
   to a 1-2 millimeter disc bulge and uncovertebral osteophytes at
14  C6-C7 (A.R. 238-39).  A lumbar spine MRI of the same date showed
   moderate to severe left and moderate right neural foraminal
15  narrowing secondary to a five millimeter disc bulge and facet
   joint hypertrophy at L4-L5, as well as a posterior annular tear
16  intervertebral disc and mild canal stenosis at L4-L5 (A.R. 241-
   42).
17

18     Like Drs. Roemer and Boyer, Dr. Sotelo initially opined that
   Plaintiff should remain off work (see A.R. 279 (February 19, 2009
19  report)), but later estimated that Plaintiff could return to his
   regular work on July 5, 2009 (A.R. 300 (May 12, 2009 physician's
20  certificate)).  Subsequently, Dr. Sotelo continued Plaintiff's
   "total temporary disability/modified work" status (A.R. 258
21  (June 23, 2009 disability slip)), stating that Plaintiff should
   remain off work until August 8, 2009 (A.R. 257 (progress
22  report)).  Plaintiff began treatment with Dr. Roemer on August
   13, 2009 (A.R. 255).
23

24     Dr. Roemer ordered additional testing, which was performed
   on August 31, 2009.  Nerve conduction studies of the upper
25  extremities reportedly were "abnormal" because of the slowing of
   two dissimilar nerves, consistent with early polyneuritis (A.R.
26  327-29).  Clinical correlation was recommended (A.R. 328).  Nerve
   conduction studies of the lower extremities were normal (A.R.
27  330-32).  Electromyograms of the upper and lower extremities were
   normal (A.R. 333-43).
28

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)
(citations omitted).  Neither Dr. Roemer nor Dr. Boyer opined that
Plaintiff was (or would be) disabled from all work for a period of 12
months.  Neither Dr. Roemer nor Dr. Boyer opined that Plaintiff would
have any specific work restrictions.  Both chiropractors ultimately
opined that Plaintiff could return to work.  Compare Willyard v.
Colvin, 633 Fed. App'x 369, 371 (9th Cir. 2015) (rejecting argument
that ALJ erred by failing to consider evidence from a chiropractor
whose opinion was conclusory and did not "go to impairment severity or
functional effects"); Kus v. Astrue, 276 Fed. App'x 555, 556-57 (9th
Cir. 2008) (while ALJ was required to take into account evidence from
a chiropractor and the ALJ did not explicitly discuss the
chiropractor's records, the ALJ did generally state that consideration
was given to reports from medical sources and nothing in the
chiropractor's records contradicted the ALJ's conclusions).

### 4.   Dr. Govan

     Plaintiff argues that the ALJ improperly evaluated Dr. Babak
Govan's opinions in finding that Plaintiff has no "severe" mental
impairments (Plaintiff's Motion, pp. 8-9).  Any error in relation to
Dr. Govan's opinions was harmless.

     Dr. Govan prepared an initial comprehensive medical-legal
evaluation on May 19, 2009, for Plaintiff's worker's compensation
claim (A.R. 627-40).  Plaintiff reported no learning problems, his
memory and concentration appeared intact, and his intelligence was
estimated as average (A.R. 629-30).  Plaintiff did report distress

including sadness and persistent worry, however. (A.R. 629).  Testing
suggested that Plaintiff was more depressed than the average pain
patient, but his anxiety was in the average range, and his
somatization was above average (A.R. 632).  Plaintiff reportedly had a
high level of somatic complaints, pain reports, and depressive
thoughts and feelings, and a moderately-high level of functional
complaints (A.R. 633-34).  A depression inventory placed Plaintiff in
the "severe" range of depression, and an anxiety inventory placed
Plaintiff in the "severe" range of anxiety (A.R. 634).  The Minnesota
Multiphasic Personality Inventory revealed an invalid profile, however
(A.R. 634).  Plaintiff scored a "highly disturbed sleep pattern" on a
sleep disturbance scale (A.R. 635).  Finally, a Coping Inventory for
Stressful Situations also revealed an invalid profile (A.R. 635).

Dr. Govan diagnosed a pain disorder associated with psychological
factors and a general medical condition (acute), depressive disorder
(not otherwise specified), anxiety disorder (not otherwise specified),
and primary insomnia (A.R. 635).  Dr. Govan assigned a Global
Assessment of Functioning ("GAF") score of 56 (A.R. 636).[11]  Dr. Govan
did not opine whether Plaintiff's mental condition would result in any
work-related restrictions (A.R. 637-38).  Dr. Govan recommended that
Plaintiff undergo psychological therapy for two to three months, then

---

[11]   Clinicians use the GAF scale to rate "psychological,
social, and occupational functioning on a hypothetical continuum
of mental health-illness."  American Psychiatric Association,
Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.
TR 2000).  A GAF of 51-60 indicates only "[m]oderate symptoms
(e.g., flat affect and circumstantial speech, occasional panic
attacks) or moderate difficulty in social, occupational, or
school functioning (e.g., temporarily falling behind in
schoolwork)."  Id.

follow up with a progress evaluation and post-treatment psychological testing (A.R. 638).


The ALJ acknowledged that Plaintiff's chiropractors had diagnosed stress or anxiety, that Plaintiff's Agreed Medical Examiner had described Plaintiff as having "quite a bit of psychiatric overlay" (see A.R. 567), and that Dr. Govan had diagnosed depressive and anxiety disorders. See A.R. 12 (citing A.R. 627-40 (Dr. Govan's evaluation) and noting that Plaintiff had an "unremarkable" mental status examination)). The ALJ found no "severe" mental impairments, observing that Plaintiff had not been under the care of a mental health specialist or on psychotropic medication, and had not alleged any particular mental impairment (A.R. 12). The ALJ concluded that Plaintiff's medically determinable mental impairments, if any, were "not alleged or shown to cause greater than slight restriction in [Plaintiff's] activities of daily living, result in no greater than 'no to mild' [sic] difficulties in [Plaintiff's] abilities to maintain social functioning, and concentration, persistence and pace, and have not resulted in any episodes decompensation [sic], each of extended duration" (A.R. 12).


Given the ALJ's analysis at Step Two and the lack of any medical source statements or medical records suggesting that Plaintiff has any work-related mental functional limitations, the ALJ's failure to find that Plaintiff suffered from any "severe" mental impairment was harmless. Compare Hurter v. Astrue, 465 Fed. App'x 648, 652 (9th Cir. 2012) (deeming harmless any error of the ALJ to consider explicitly certain alleged impairments in determining claimant's residual

functional capacity, where the ALJ discussed the alleged impairments at Step Two and found them non-severe, and the medical evidence provided meager support for the alleged impairments); Diep Trac v. Colvin, 2013 WL 1498908 (C.D. Cal. Apr. 9, 2013) (finding no error from ALJ's failure to find a severe mental impairment where claimant had not specified any functional limitations due to depression, did not allege any mental health symptoms, and there was no evidence or allegations that the claimant had any specific functional limitations due to depression). In analyzing the disability issue, the ALJ expressly considered Plaintiff's mental condition. No material error occurred. See, e.g., Hamilton v. Commissioner of Social Security, 2016 WL 1222546 (E.D. Cal. Mar. 29, 2016) (finding no material error from ALJ's failure to develop the record concerning a claimant's alleged intellectual disability where the claimant had claimed no intellectual disability, the claimant's counsel had not addressed whether the claimant suffered from an intellectual disability, and the record contained no "critical evidentiary shortfalls").

## B. The ALJ Stated Sufficient Reasons for Rejecting Plaintiff's Credibility.

Plaintiff contends that the ALJ improperly discredited Plaintiff's testimony. See Plaintiff's Motion, p. 10. An ALJ's assessment of a claimant's credibility is entitled to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Where, as here, the ALJ finds that the claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged

symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by specific, cogent findings.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must offer "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of malingering).[12]  An ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal citations and quotations omitted); see also Social Security Ruling 96-7p.  As discussed below, the ALJ stated sufficient reasons for deeming Plaintiff's subjective complaints less than fully credible.

Plaintiff testified that he stopped working in February 2009 because he injured his lower back at work and supposedly was no longer able to do his job (A.R. 31; but see A.R. 237 (chiropractor's note indicating that Plaintiff was "laid off 2/4/09")).  Plaintiff claimed

---

[12]    In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Commissioner, 659 F.3d at 1234; see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

he cannot work due to pain in his back, neck, arms, and legs (A.R. 39).  Plaintiff was using a cane that Dr. Chanin purportedly had prescribed (A.R. 39).  Plaintiff testified that he lives with his girlfriend, does not drive because his legs "don't work," and spends his days getting up, eating, sleeping, going out in his yard, and watching television (A.R. 40-41).  Plaintiff claimed he sleeps two to three hours during the daytime (A.R. 43).  Plaintiff had been taking only Tylenol for pain for more than a year, supposedly because doctors were not giving him any prescriptions (although Plaintiff admittedly was still seeing doctors as part of his ongoing worker's compensation claim) (A.R. 41-42).  The Tylenol helped "a little bit" (A.R. 41).[13]

The ALJ acknowledged that Plaintiff "established a foundation for at least the bulk of his basic symptoms (no etiology is established for upper extremity symptoms except as they may relate to the cervical spine)" (A.R. 13).  However, the ALJ found "multiple factors" undermining Plaintiff's credibility: (1) the Agreed Medical Examiner's reference to "psychiatric overlay" (A.R. 567); (2) Plaintiff's refusal

---

[13]    In a Function Report - Adult form dated December 15, 2011, Plaintiff claimed that he has pain in his neck, spine, hands, and wrists, and cannot lift more than five pounds occasionally, and cannot walk for more than one or two blocks (A.R. 186, 191).  Plaintiff reportedly required help with his own personal care, and his girlfriend (or wife) allegedly did all the housework (A.R. 187-89).  Plaintiff assertedly had been using a cane and braces for his right and left hands since April 17, 2010 (A.R. 192). Among other medications, Plaintiff then was taking Hydrocodone (A.R. 193).

In an Exertion Questionnaire dated March 15, 2012, Plaintiff reported similar issues and limitations (A.R. 202-05).  Plaintiff reported that he has pain all the time and fatigue "almost all day" (A.R. 202).

to allow for non-intrusive examination (A.R. 561-62 (Plaintiff refusing: (a) to test hyperextension, rotation and lateral extension of the cervical spine, (b) strength testing in the wrists, biceps and triceps, (c) to stand on his heels and toes (although he had previously submitted to such testing) (A.R. 605-06, 718-21)); (3) evidence of "effort or lack thereof" on testing, which placed in issue the "genuineness of 'abnormalities'" (A.R. 721 (reporting that Plaintiff did not make "full effort" on grip testing in both upper extremities and in testing to determine the lifting capacity of his back)); (4) contrasting results on straight leg raising tests (A.R. 555 (straight leg raising positive sitting on the right at 70 degrees but negative supine)), a wide range of variance in range of motion of the lumbar spine (A.R. 657, 720, 781 (reporting minimal restriction to less than 50 percent of normal)), and apparent "overreaction" during straight leg raising (A.R. 373); and (5) Plaintiff's "evasive" testimony categorically denying the Agreed Medical Examiner's statement that the Examiner had tried to arrange new testing but Plaintiff had refused (A.R. 44 (Plaintiff testifying that the Examiner was lying)).  See A.R. 13-14.  The ALJ also discounted Plaintiff's subjective complaints of pain (self-assessed at 10/10), because Plaintiff had taken only Tylenol for more than a year and lacked any other ongoing treatment (A.R. 14).  The ALJ acknowledged that Plaintiff reported having undergone approximately one year of physical therapy and having had "a few" epidural injections in 2009-2010 (A.R. 15; see also A.R. 642 (Plaintiff reporting to Examiner that he had undergone three lumbar epidural steroid injections which assertedly did not provide any pain relief)).  Nonetheless, the ALJ characterized Plaintiff's treatment through 2010 as "conservative" (A.R. 15).

1    A conservative course of treatment may properly discredit a
2    claimant's allegations of disabling pain.  See, e.g., Parra v. Astrue,
3    481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, 552 U.S. 1141
4    (2008) (treatment with over-the-counter pain medication is
5    "conservative treatment" sufficient to discredit a claimant's
6    testimony regarding allegedly disabling pain); Johnson v. Shalala, 60
7    F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment can suggest a
8    lower level of both pain and functional limitation, justifying adverse
9    credibility determination); but see Christie v. Astrue, 2011 WL
10   4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to categorize as
11   "conservative" treatment including the use of narcotic pain medication
12   and epidural injections).  Similarly, an "unexplained or inadequately
13   explained failure to seek treatment [consistent with the alleged
14   severity of subjective complaints]" may also justify rejecting a
15   claimant's credibility.  Molina v. Astrue, 674 F.3d at 1113 (citations
16   and internal quotation marks omitted); see SSR 96-7p at *8
17   ("[Claimant's] statements may be less credible if the level or
18   frequency of treatment is inconsistent with the level of complaints.
19   . . .").  In Plaintiff's case, the only treatment records consist of
20   his chiropractic notes and worker's compensation reports.  While
21   Plaintiff reportedly had epidural injections in 2010 and took
22   prescription pain medication in 2010, Plaintiff stopped taking
23   anything other than Tylenol for over a year before the administrative
24   hearing.  There is no indication that Plaintiff sought out additional
25   treatment for his pain and, in fact, the record suggests that he did
26   not keep appointments with his Agreed Medical Examiner (A.R. 820-21).
27   Plaintiff's limited course of treatment and his use of mild medication
28   for his allegedly disabling pain properly undercut Plaintiff's

1  credibility.

2

3       Additionally, Plaintiff's limited effort, inconsistent test

4  results, and noted "overreaction" on physical testing also properly

5  undermine the credibility of Plaintiff's allegations of disabling

6  pain.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)

7  ("fail[ure] to give maximum or consistent effort during two physical

8  capacity evaluations" detracted from credibility of allegations).

9

10       Finally, as the ALJ emphasized, Plaintiff's "evasive" answers to

11  questions concerning his cooperation with the Medical Examiner also

12  support the discounting of Plaintiff's credibility.  The ALJ stated

13  that the Agreed Medical Examiner had been trying to schedule an

14  appointment, to which Plaintiff's representative said, "Yes" (A.R. 39-

15  40 (referencing A.R. 820-21 (notation in Examiner's report re same)).

16  Later, however, the ALJ asked Plaintiff about the Examiner's notation

17  that the Examiner had called Plaintiff several times to set up

18  additional testing (A.R. 44).  Plaintiff responded, somewhat

19  implausibly, "It's lies" (A.R. 44; see also A.R. 49 (Plaintiff's

20  girlfriend supporting Plaintiff's response)).  The ALJ reasonably

21  chose not to believe Plaintiff's testimony "categorically denying" the

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Examiner's notation (A.R. 14).[14]  In weighing a claimant's credibility, an ALJ properly may consider the "ordinary techniques of credibility evaluation," including "other testimony by the claimant that appears less than candid."  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (citations omitted).

        Accordingly, the ALJ stated sufficient reasons to allow this Court to conclude that the Administration discounted Plaintiff's credibility on permissible grounds.  See Moisa v. Barnhart, 367 F.3d at 885.  The Court therefore defers to the Administration's credibility determination.  See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for

///
///
///
///

---

[14]     The ALJ indicated that she might seek an opinion from the Examiner after the administrative hearing (A.R. 55). Plaintiff's representative identified a "problem," telling the ALJ that the Examiner was "angry at [Plaintiff] because [Plaintiff] won't allow surgery of his back.  [The Examiner] told [Plaintiff] to go home.  [The Examiner] said I don't want to see you anymore" (A.R. 55).  The ALJ attributed these statements to Plaintiff and found the statements not credible in light of the fact that the Examiner's reports had not recommended surgery (A.R. 14).  Indeed, the Examiner deferred any diagnoses or treatment suggestions pending additional testing (A.R. 567, 821). To the extent that the ALJ's reliance on the representative's statements to discount Plaintiff's credibility was infirm, the reliance was harmless.  Even if one or two of the ALJ's stated reasons were legally infirm, the Court still can uphold the ALJ's credibility determination.  See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008).

the decision are provided); accord Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995).[15]

**CONCLUSION**

For all of the foregoing reasons,[16] Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 8, 2016.


                                    /S/
                            CHARLES F. EICK
                    UNITED STATES MAGISTRATE JUDGE

---

[15]    In this discussion section, the Court does not determine whether Plaintiff's subjective complaints are credible. Some evidence suggests that those complaints may be credible. However, it is for the Administration, and not this Court, to evaluate witnesses' credibility.  See Magallanes v. Bowen, 881 F.2d 747, 750, 755-56 (9th Cir. 1989).

[16]    The Court has considered and rejected each of Plaintiff's arguments.  Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration.  See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).